UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL LADUE and AMANDA LADUE, | NO. 2:20-CV-01472:TLF |
| Plaintiffs, | DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES |
| v. | |
| KETTLE FALLS INTERNATIONAL RAILWAY, LLC. and OMNITRAX, INC. | |
| Defendants. | |

For their answer to Plaintiffs Michael Ladue and Amanda Ladue's (collectively, "Plaintiffs") Complaint for Damages, Defendants Kettle Falls International Railway, LLC and Omnitrax, Inc. (collectively, "Defendants") admit, deny, and allege as follows:

PARTIES

1.      Defendants are without sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

2.      Defendants are without sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

3.      Defendants admit that Kettle Falls International Railway, LLC is and was a duly organized Colorado company with its principle place of business in Denver, Colorado, authorized to do business in the State of Washington. Defendants further admit that Kettle

LAW OFFICES OF JASON A. WINNELL
520 Pike Street, Suite 915,
Seattle, WA 98101
Phone (206) 676-3934 / Fax (877) 369-4901

Falls International Railway, LLC is a common carrier by railroad and engages in commerce between Washington and Canada. Defendants deny the remaining allegations in this paragraph.

4.     Defendants admit that OmniTRAX, Inc. is and was a duly organized Colorado company with its principle place of business in Denver, Colorado. Defendants further admit that OmniTRAX, Inc. manages Kettle Falls International Railway, LLC. Defendants deny all other allegations in this paragraph.

5.     Denied.

6.     Denied.

JURISDICTION AND VENUE

7.     Defendants admit and deny this paragraph as admitted and denied above.

8.     Denied. Plaintiffs are not employees of a common carrier. The services agreement between Kettle Falls International Railway, LLC and All American Track, Inc., Plaintiff Michael LaDue's employer at all material times, expressly stated that no employee of All American Track, Inc. shall be an employee of Kettle Falls International Railway, LLC or OmniTRAX, Inc. *See,* Services Agreement attached hereto as **Exhibit A**. The Federal Employers Liability Act, 45 U.S.C. §§ 51 *et seq.* does not apply, therefore this Court lacks jurisdiction over these matters.

9.     Denied.

10.    Denied.

GENERAL ALLEGATIONS

11.    Defendants admit and deny this paragraph as admitted and denied above.

12.    Admitted.

LAW OFFICES OF JASON A. WINNELL
520 Pike Street, Suite 915,
Seattle, WA 98101
Phone (206) 676-3934 / Fax (877) 369-4901

1     13.    Admitted.

2     14.    Defendants are without sufficient information to form a belief as to the truth of

3     the allegations contained in this paragraph, and therefore deny the same.

4     15.    Defendants are without sufficient information to form a belief as to the truth of

5     the allegations contained in this paragraph, and therefore deny the same.

6     16.    Defendants admit that Brady Peters conducted a job safety briefing on

7     November 9, 2018 that was attended by Plaintiff.  Defendants deny the remaining allegations

8     in this paragraph.

9     17.    Defendants deny that Brady Peters instructed Plaintiff to return the tamper to

10    the yard.  Defendants are without sufficient information to form a belief as to the truth of the

11    remaining allegations contained in this paragraph, and therefore deny the same.

12    18.    Defendants admit that Plaintiff Michael LaDue traveled South on the San Poil

13    Line on the tamper machine towards the Kettle Falls International Railway, LLC yard.

14    Defendants are without sufficient information to form a belief as to the truth of the remaining

15    allegations contained in this paragraph, and therefore deny the same.

16    19.    Defendants are without sufficient information to form a belief as to the truth of

17    the allegations contained in this paragraph, and therefore deny the same.

18    20.    Defendants are without sufficient information to form a belief as to the truth of

19    the allegations contained in this paragraph, and therefore deny the same.

20    21.    Defendants are without sufficient information to form a belief as to the truth of

21    the allegations contained in this paragraph, and therefore deny the same.

22    22.    Defendants are without sufficient information to form a belief as to the truth of

23    the allegations contained in this paragraph, and therefore deny the same.

LAW OFFICES OF JASON A. WINNELL
520 Pike Street, Suite 915,
Seattle, WA 98101
Phone (206) 676-3934 / Fax (877) 369-4901

1      23.    Defendants are without sufficient information to form a belief as to the truth of

2  the allegations contained in this paragraph, and therefore deny the same.

3  FIRST CAUSE OF ACTION

4  (Federal Employers Liability Act – Negligence as to All Defendants)

5      24.    Defendants admit and deny this paragraph as admitted and denied above.

6      25.    This paragraph contains a statement of authority, rather than an averment of

7  fact, and no response is required of Defendants.  To the extent a response is required, denied.

8  Defendants further deny that the Federal Employers Liability Act, 45 U.S.C. §§ 51 *et seq.* is

9  applicable to these matters because Plaintiff Michael LaDue was not an employee of

10  Defendants nor any common carrier.

11      26.    Admitted.

12      27.    Denied.

13      28.    Denied.

14      29.    Denied.

15      30.    Denied.

16      31.    Denied.

17      32.    Denied.

18  SECOND CAUSE OF ACTION

19  (Federal Employers Liability Act – Strict Liability under

20  Federal Safety Regulation 49 C.F.R. § 214.319 as to All Defendants)

21      33.    Defendants admit and deny this paragraph as admitted and denied above.

22      34.    This paragraph contains a statement of authority, rather than an averment of

23  fact, and no response is required of Defendants.  To the extent a response is required, denied.

LAW OFFICES OF JASON A. WINNELL
520 Pike Street, Suite 915,
Seattle, WA 98101
Phone (206) 676-3934 / Fax (877) 369-4901

Defendants further deny that the Federal Employers Liability Act, 45 U.S.C. §§ 51 *et seq*, or 49 49 C.F.R. § 214.319 are applicable to these matters because Plaintiff Michael LaDue was not an employee of Defendants nor any common carrier.

35.    Denied.

36.    Denied.

37.    Denied.

## THIRD CAUSE OF ACTION

(Federal Employers Liability Act – Strict Liability under

Federal Safety Regulation 49 C.F.R. § 214.321 as to All Defendants)

38.    Defendants admit and deny this paragraph as admitted and denied above.

39.    This paragraph contains a statement of authority, rather than an averment of fact, and no response is required of Defendants.  To the extent a response is required, denied. Defendants further deny that the Federal Employers Liability Act, 45 U.S.C. §§ 51 *et seq,* or 49 49 C.F.R. § 214.321 are applicable is applicable to these matters because Plaintiff Michael LaDue was not an employee of Defendants nor any common carrier.

40.    Denied.

41.    Denied.

42.    Denied.

## FOURTH CAUSE OF ACTION

(Federal Employers Liability Act – Strict Liability under

Federal Safety Regulation 49 C.F.R. § 214.7 as to All Defendants)

43.    Defendants admit and deny this paragraph as admitted and denied above.

LAW OFFICES OF JASON A. WINNELL
520 Pike Street, Suite 915,
Seattle, WA 98101
Phone (206) 676-3934 / Fax (877) 369-4901

1    44.    This paragraph contains a statement of authority, rather than an averment of

2    fact, and no response is required of Defendants.  To the extent a response is required, denied.

3    Defendants further deny that the Federal Employers Liability Act, 45 U.S.C. §§ 51 *et seq,* or 49

4    49 C.F.R. § 214.7 are applicable is applicable to these matters because Plaintiff Michael LaDue

5    was not an employee of Defendants nor any common carrier.

6    45.    Denied.

7    46.    Denied.

8    47.    Denied.

9                              FIFTH CAUSE OF ACTION

10              (Federal Employers Liability Act – Strict Liability under

11              Federal Safety Regulation 49 C.F.R. § 214.353 as to All Defendants)

12    48.    Defendants admit and deny this paragraph as admitted and denied above.

13    49.    This paragraph contains a statement of authority, rather than an averment of

14    fact, and no response is required of Defendants.  To the extent a response is required, denied.

15    Defendants further deny that the Federal Employers Liability Act, 45 U.S.C. §§ 51 *et seq,* or 49

16    49 C.F.R. § 214.353 are applicable is applicable to these matters because Plaintiff Michael

17    LaDue was not an employee of Defendants nor any common carrier.

18    50.    Denied.

19    51.    Denied.

20    52.    Denied.

21                              SIXTH CAUSE OF ACTION

22              (Negligence under Common Law as to all Defendants)

23    53.    Defendants admit and deny this paragraph as admitted and denied above.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES - Page 6 of 9

LAW OFFICES OF JASON A. WINNELL
520 Pike Street, Suite 915,
Seattle, WA 98101
Phone (206) 676-3934 / Fax (877) 369-4901

54. This paragraph contains a statement of law, rather than an averment of fact, and no response is required of Defendants. To the extent a response is required, denied.

55. Denied.

56. Denied.

57. Denied.

## SEVENTH CAUSE OF ACTION

### (Loss of Consortium under Common Law as to all Defendants)

58. Defendants admit and deny this paragraph as admitted and denied above.

59. Defendants are without sufficient information to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.

60. Denied.

61. Denied.

## JURY TRIAL DEMANDED

62. This paragraph contained a jury demand and no response is required of Defendants. To the extent a response is required, denied.

Except as expressed admitted above, each and every allegation in Plaintiffs' Complaint for Damages is denied.

## AFFIRMATIVE DEFENSES

By way of affirmative defenses and without admitting those matters previously denied, Defendants allege as follows:

1. Plaintiff is not an employee of a common carrier and is not entitled to the protections of the Federal Employers Liability Act.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES - Page 7 of 9

LAW OFFICES OF JASON A. WINNELL
520 Pike Street, Suite 915,
Seattle, WA 98101
Phone (206) 676-3934 / Fax (877) 369-4901

2.      Plaintiff has already been compensated, or will be compensated, for his injuries and damages via his workers compensation claim against his employer All American Track.

3.      Any injury and/or damage as alleged in Plaintiffs' Complaint was the direct and proximate result of the fault of the Plaintiff Michael LaDue and/or some party other than Defendants.

4.      Plaintiff failed to mitigate his damages.

5.      Discovery may establish that some or all of Plaintiffs' claimed injuries and damages either pre-dated or post-dated the incident and are not related thereto.

6.      Defendants are entitled to an offset for any amounts paid to or on behalf of Plaintiffs by or on behalf of Defendants.

Defendants specifically reserve the right to amend this Answer by way of adding affirmative defenses, counterclaims, cross-claims, or by instituting third-party actions, as additional facts are obtained through further information and discovery.

WHEREFORE having fully answered Plaintiffs' Complaint, Defendants pray that the Plaintiffs take nothing thereby and that the same be dismissed with prejudice and with costs to the Defendants.

DATED this 14th day of December, 2020.

LAW OFFICES OF JASON A. WINNELL

By: _____
        Ryan T. Probstfeld, WSBA #43580
        Law Office of Jason A. Winnell
        520 Pike Street, Suite 915
        Seattle, WA 98101
        T: 206-676-3934
        F: 877-369-4901
        E: ryan.probstfeld@thehartford.com

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES - Page 8 of 9

LAW OFFICES OF JASON A. WINNELL
520 Pike Street, Suite 915,
Seattle, WA 98101
Phone (206) 676-3934 / Fax (877) 369-4901

CERTIFICATE OF SERVICE

I, the undersigned, certify under penalty of perjury under the laws of the State of Washington that on this date, I served the parties in this matter with a true and correct copy of the document on which this certification appears, by ☒ Pacer, ☒ email, at the following address(es):

Carole M. Bosch, Esq.,
Hildebrand Mcleod & Nelson, LLP,
350 Frank H. Ogawa Plaza, 4th Floor,
Oakland, CA 94612
Counsel for Plaintiffs Ladue
Email:
bosch@hmnlaw.com
petru@hmnlaw.com
levy@hmnlaw.com

DATED: December 14, 2020.

_____
Arely Reyes Perez

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES - Page 9 of 9

LAW OFFICES OF JASON A. WINNELL
520 Pike Street, Suite 915,
Seattle, WA 98101
Phone (206) 676-3934 / Fax (877) 369-4901

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

**Services Agreement**

This Services Agreement ("Agreement") is entered into this 6th day of July 2018, by and between **All American Track Inc.** ("Contractor") and **Kettle Falls International Railway, LLC** ("Railroad").

## Section 1. Scope of Work

A.      Contractor, in consideration of the payments set forth in Exhibit A in this Agreement are to be made by Railroad, agrees to furnish all labor, services, appliances, tools and material for, and, except as otherwise provided in this Agreement, to perform the services specified in this Agreement (the "Work"), subject to the terms and conditions contained in it. Contractor shall complete the Work in the most thorough workmanlike and substantial manner in every respect, within the terms and time frames specified in this Agreement, and according to the plans and specifications contained in Exhibit A to this Agreement as set forth below and made a part of this Agreement by this reference, and to the satisfaction and acceptance of Railroad.

B.      Each task that Railroad wishes Contractor to perform will be defined in Exhibit A to this Agreement.

B.      Unless otherwise specified in Exhibit A, Contractor shall provide various Work on an as needed basis at the rates set forth in Exhibit A. In the case of a conflict or inconsistency between the provisions of this Agreement and any provisions contained in the Exhibits to this Agreement, the provisions of this Agreement shall control.

C.      Railroad may make changes, alterations, addition, or deductions to the Work. No changes shall be performed by Contractor except upon receipt of written instructions or drawings from Railroad, (and approval by Railroad of (a) any increase or decrease in the cost of the Work, if any, or (b) any delay in the time for performance, if any, due to such changes), and the execution of an appropriate change order for such revisions.

D.      In the performance of the Work, Contractor and all of its subcontractors shall comply with all applicable federal, state and local government statutes, ordinances, orders, and regulations, including environmental laws, regulations, and ordinances.

E.      Contractor shall not treat, store, or dispose of hazardous waste nor release any hazardous substances as the same are defined in applicable federal, state or local laws and regulations on or adjacent to Railroad's property.

F.      No penalties, cost or additional expense resulting from failure to comply with any of the requirements in Sections 1D and/or E shall be payable by Railroad.

G.      Railroad shall serve as project engineer and make periodic inspections of the Work

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

to verify quantity and quality of materials, quality of workmanship, adherence to schedules, and to approve the Work. All Work is subject to final inspection and approval of the authorized representative of the Railroad ("Engineer").

H.  In the event the Engineer detects any defect(s) in the Work during any periodic inspection or final inspection, Contractor shall be given a maximum of thirty (30) days to correct any such defects from the time it is notified by Engineer of such defects. All defects shall be repaired to the Engineer's satisfaction.

I.  Contractor represents that it has, or shall secure, at its sole cost and expense, all personnel required to perform the Work under this Agreement. Such personnel shall not be employees of, nor have any contractual relationships with Railroad or OmniTRAX, Inc. ("OmniTRAX"). Contractor, consistent with its status as an independent contractor, further agrees that its personnel shall not hold themselves out as, nor claim to be, officers or employees of Railroad or OmniTRAX by reason of this Agreement. Contractor agrees that it is as fully responsible to Railroad and OmniTRAX for the acts and omissions of its employees, subcontractors, and of persons either directly or indirectly employed by a subcontractor, as the Contractor is for the acts and omissions of persons directly employed by the Contractor. Nothing contained in the Agreement documents shall create any contractual relationship between any subcontractor and Railroad or OmniTRAX. Contractor shall release, defend and indemnify Railroad and OmniTRAX from and against any and all claims, liabilities, damages, losses, costs or expenses, including, without limitation, attorneys' fees and legal costs arising or resulting from findings that the employees of Contractor or Contractor's subcontractors are in fact employees of the Railroad for the purposes of Railroad Retirement Board ("RRB") liability.

## Section 2.  Term

The term of this Agreement shall commence on the date set forth above (the "Effective Date") and shall remain in effect through and including December 31, 2018.

## Section 3.  Termination

A.  This Agreement may be terminated in the event of an act of default as set forth in Section 12.

B.  Notwithstanding anything to the contrary in the Agreement, either party, for any reason, may cancel this Agreement upon giving not less than thirty (30) days' written notice to the other party.  Termination of this Agreement shall not affect any liabilities or obligations of the parties which existed prior to such termination.

## Section 4.  Contract Price

A.  Railroad shall pay Contractor based on monthly invoices for the value of the Work items completed during the preceding calendar month, subject to the right of Railroad to withhold final payment for the Work until Railroad gives its inspection of the Work and

final approval of it as provided in Sections 1G and H above. Contractor shall submit invoices on the first working day of each month for Work completed the previous month. Subject to the final inspection and approval of the Work, Railroad shall deliver to Contractor payment for each approved invoice within thirty (30) days after receipt of the invoice.

B.     The payment to Contractor by Railroad shall be in accordance with the contract specification and prices shown on Exhibit A. Prices shall be constructed as including all applicable taxes regardless of whether sales or use tax is stated separately.

### Section 5.  Rail Operations

**Contractor warrants that the Work shall not interfere with nor degrade Railroad's safety or the operation of Railroad. If Railroad determines the Work is interfering with Railroad operations or degrading railroad safety, Railroad shall notify Contractor and Contractor shall cease the Work until such time as Railroad notifies Contractor to resume the Work.**

### Section 6.  Insurance

Contractor shall purchase and maintain insurance as specified below covering the Work to be performed pursuant to this Agreement and all obligations assumed pursuant to it, from effective date of this Agreement until expiration or termination with insurance companies assigned a current Financial Strength Rating of at least A and Financial Size Category of X or better by A. M. Best Company or an equivalent rating agency approved by Railroad. Contractor shall require all subcontractors likewise to procure and maintain this same insurance unless they are covered by Contractor's insurance:

A.     **Workers' Compensation Insurance** providing Workers' compensation benefits mandated under applicable state law and employer's liability insurance subject to minimum limits of not less than $1,000,000 Bodily Injury by Accident, Each Accident; $1,000,000 Bodily Injury by Disease, Policy Limit; $1,000,000 Bodily Injury by Disease, Each Employee, and includes a waiver of subrogation in favor of Railroad and the other indemnified parties specified in Section 13.A. (collectively "Indemnified Parties").  If coverage is provided through a Monopolistic State Fund, a stop gap endorsement on either the Commercial General Liability or Workers' Compensation Policy is required to meet the Employers' Liability requirement.

Notwithstanding the foregoing, Contractor may, subject to the terms and conditions of this paragraph, self-insure for Workers' Compensation where allowed by law. Contractor shall provide Railroad with audited financial statements and Railroad may, at its discretion, which shall not be unreasonably withheld, deem such financial statements acceptable prior to authorizing Contractor to self-insure. Where applicable, Contractor shall also provide state issued self-insurer authorization documents to Railroad.

B.     **Commercial General Liability Insurance** subject to limit of $1,000,000 each

occurrence for bodily injury, property damage, personal injury and libel and/or slander with an annual aggregate limit of no less than $2,000,000. Policy coverage is to be based on usual Insurance Services Office ("ISO") policy forms, or equivalent, to include, but not be limited to: Operations and Premises Liability, Completed Operations and Products Liability, Personal Injury Liability and Contractual Liability insurance. Any and all General Liability policies procured by Contractor shall be amended to delete any and all railroad exclusions including exclusions for working on or within fifty feet (50') of any railroad track, railroad bridge, trestle or tunnel (CG 24 17 endorsement or equivalent).

C.    **Business Automobile Liability Insurance** subject to a minimum limit of $1,000,000 each accident for bodily injury and property damage. Policy coverage shall be based on usual ISO policy forms referred to as Business Automobile Policy ("BAP") to cover motor vehicles owned, leased, rented, hired or used on behalf of Contractor. If applicable to this agreement and applicable under Federal Law, an MCS 90 endorsement evidencing limits of coverage as outlined in the Motor Carrier Act of 1980 dependent on type of carriage, commodity, and type of commerce.

D.    **Umbrella Liability Insurance** subject to a limit of $4,000,000 each occurrence for bodily injury, property damage, personal injury and libel and/or slander. Policy coverage is to be at least as broad as primary coverages and include, but not be limited to, Operations and Premises Liability, Completed Operations and Products Liability, Personal Injury Liability, and Contractual Liability insurance. Completed Operations coverage is to be maintained for a period of not less than three (3) years after the expiration or termination of this Agreement. Umbrella liability shall apply to Commercial General Liability, Auto Liability, and Employers' Liability Insurance.

The required limits of insurance may be satisfied by a combination of Primary and Umbrella or Excess Liability Insurance.

E.    All insurance required of Contractor with the exception of  Workers' Compensation and Employers' Liability shall include Railroad, OmniTRAX, and any subsidiary, parent or affiliates of OmniTRAX and their owners, agents, representatives, members, managers, officers, directors, shareholders, and employees as additional insured and include wording which states that the insurance shall be primary and not excess over or contributory with any insurance carried by Railroad, OmniTRAX and its or their affiliates.

F.    All insurance shall provide a minimum of thirty (30) days' advance written notice of insurer's intent to cancel or otherwise terminate policy coverage.

G.    All policies shall be written on an occurrence basis. If Contractor cannot obtain an occurrence based policy for any required coverage, policies may be written on a claims made basis. If any policies providing the required coverage(s) are written on a claims-made basis, the following is applicable:

1.    The retroactive date shall be prior to the commencement of the Work.

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

2.      Contractor shall maintain such policies on a continuous basis.

3.      If there is a change in insurance companies or the policies are canceled or not renewed, Contractor shall purchase an extended reporting period of not less than three (3) years after the Agreement expiration or termination date.

H.      Contractor shall file with Railroad and its affiliates on or before the Effective Date of this Agreement a valid Certificate of Insurance for all required insurance policies. Each certificate shall identify the Railroad, OmniTRAX, its (or their) affiliates and other required parties as set forth above as additional insured, and state that Railroad and its affiliates shall receive a minimum of thirty (30) days' advance written notice of insurer's intent to cancel or otherwise terminate policy coverage. Prior to expiration of such insurance, Contractor shall supply updated Certificates of Insurance that clearly evidence the continuation of all coverage in the same manner, limits of protection, and scope of coverage, as was provided by the original Certificates and as required in this Section 6.

Contractor hereby waives all rights of recovery and all insurance policies required above shall be endorsed to waive all rights of subrogation against Railroad, its owners, affiliates, and other required parties as set forth above for damages to the extent covered by insurance.

I.      Contractor's or subcontractor's compliance with obtaining the above insurances shall in no way limit the "Liability and Indemnity" afforded to the Indemnified Parties specified in Section 13 below.

## Section 7. Safety Program

A.      Contractor shall have in place a safety and training program conforming to the requirements of federal, state, and local laws and Federal Railroad Administration ("FRA"), rules and regulations, including, without limitation, 49 C.F.R. 214, 232 and 243 (collectively, the "Safety Rules and Regulations") and Railroad's Roadway Worker Protection Program. All employees of Contractor or any subcontractors utilized shall be required to attend Railroad's Roadway Worker Safety and Safety Rules Class prior to their performing any duties related to the Work. Railroad, at its sole option, shall: 1) provide a train the trainer class at no additional cost to Contractor, or 2) arrange for a safety training provider suitable to the Railroad ("Trainer") to provide the class to Contractor and any subcontractors and Contractor shall, at its sole cost and expense, pay directly to the Trainer a charge for each of Contractor's employees or their subcontractors' employees attending such class. Periodic changes to the Safety Rules and Regulations or Railroad's Roadway Worker Protection Program may require additional or repeated training classes. The cost of Contractor's or subcontractors' personnel attending the initial training class or any additional training classes shall be considered as incidental to the Work and Railroad shall make no additional payments to Contractor for participation in these classes. Contractor shall release, defend and indemnify Railroad and OmniTRAX from and against any and all claims, liabilities,

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

damages, losses, costs or expenses, including, without limitation, attorneys' fees and legal costs arising or resulting from Contractors or subcontractors failing to comply with the Safety Rules and Regulations.

B.     The use of proper safety devices by all employees of Contractor and employees of any subcontractors utilized by Contractor shall be required and Contractor shall take reasonable actions to enforce the use of safety devices, including traffic control devices as may be required by the federal or state agencies. All employees of Contractor and employees of any subcontractors utilized by Contractor shall meet or exceed Railroad's personal protection equipment ("PPE") requirements. Contractor shall enforce a zero tolerance policy for failure of its employees and subcontractors to use required PPE.

C.     Contractor shall develop and administer a drug and alcohol use and testing program that complies with 49 CFR Part 219. Contractor shall submit a copy of its program to Railroad and Contractor shall maintain and administer the program throughout the term of this Agreement. Contractor shall enforce a zero tolerance policy for drugs and alcohol in the work place.

D.     Notwithstanding anything to the contrary in this Agreement, if Contractor or its subcontractor is found to be in violation of any Safety Rules and Regulations or any safety rule, regulation or requirement of Railroad, or causes an incident, Railroad reserves the right to notify the Contractor to stop all Work. The Contractor must immediately cease all Work, promptly perform a complete investigation and determine the appropriate remedial actions. Contractor shall provide any documentation to Railroad at Railroad's request. When Railroad, at its sole discretion, is satisfied with Contractor's investigation and remedial actions Railroad shall notify Contractor as to what date the Contractor may return to return to Work. Notwithstanding anything to the contrary in this Agreement, Railroad retains the right, at its sole discretion and at any time, to remove any Contractor or subcontractor employee from the Work and the premises of Railroad. Contractor recognizes and agrees that Railroad shall make no additional payments to Contractor for lost time due to Work stoppage.

E.     Contractor and its subcontractors shall utilize the correct equipment for the task

F.

G.     HG

H.

I.

J.     as it was designed. All equipment must be fully functional, inspected, and maintained by Contractor to a state that allows Contractor to perform the Work safely and in compliance with all federal, state and local laws, rules, regulations, and industry practices, including Railroad's policies. Railroad may request inspection of Contractor's records and perform equipment audits at any time. Railroad, in its sole judgment, may require that Contractor perform inspections, repairs or changes to the equipment to enable Contractor to safely perform the Work. Contractor agrees to immediately correct

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

the issues as requested by Railroad.

**Section 8.  Policies & Laws Prohibit All Forms of Harassment**

A.      Railroad is committed to providing a work environment that is free from all forms of discrimination and conduct that may be considered harassing, coercive, or disruptive, including sexual harassment. Actions, words, jokes, or comments based on an individual's sex, race, color, national origin, age, religion, sexual orientation, gender identity, or any other legally protected characteristic shall not be tolerated. Railroad strongly opposes sexual or other harassment in any form against any employee, vendor, contractor or customer.

B.      Contractor must have in place policies and procedures regarding all prohibited forms of harassment. If Railroad determines that the Contractor, subcontractor, or employees of either are in violation of Railroad's policy, Railroad reserves the right to notify the Contractor to stop all Work. The Contractor must immediately cease all Work, promptly perform a complete investigation and determine the appropriate remedial actions. Contractor shall provide any documentation to Railroad at Railroad's request. When Railroad, at its sole discretion, is satisfied with Contractor's investigation and remedial actions Railroad shall notify Contractor as to what date the Contractor may return to return to Work. Notwithstanding anything to the contrary in this Agreement, Railroad retains the right, at its sole discretion and at any time, to remove any Contractor or subcontractor employee from the Work and the premises of Railroad. Railroad shall make no additional payments to Contractor for lost time due to Work stoppage.

**Section 9.  Subsurface Installations**

Railroad may have previously granted permits to others for certain uses of its property and Contractor hereby acknowledges that absence of markers on Railroad property does not constitute a warranty by Railroad of no subsurface installations. Contractor accepts full responsibility for any and all damages, loss, claims, judgments and recoveries due to Contractor's operations on Railroad property involving subsurface installations.

**Section 10.  Recordkeeping**

Contractor and each subcontractor shall maintain, for a period not less than five (5) years following the Work completion date, adequate books, records, and supporting documents to verify the amounts, recipients, and uses of all funds received for the Work.

**Section 11.  Warranty**

Contractor warrants all material used and services performed for a period of ~~three (3) years~~ ONE (1) Year *HG* from acceptance. Notwithstanding the forgoing, if it is determined by Engineer,

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

in his or her sole judgment, that Contractor's Work was deficient or material used is deficient and needs to be replaced, then Contractor shall correct the deficiencies and replace the material without charge to Railroad. Contractor shall warrant any replaced material for a period of three (3) years from the date of replacement.

## Section 12.  Default

An event of default shall occur if:

A.      Contractor fails to timely complete any portion of the Work after five (5) days' written notice thereof by Railroad;

B.      Contractor fails to perform or observe any covenant, condition or agreement to be performed or observed by it under this Agreement and such failure continues uncured for five (5) days after written notice thereof, except if any insurance coverage required of Contractor in Section 6 is not in place or lapses, this Agreement shall immediately terminate without further action of Railroad;

C.      Contractor fails to cause the removal of any lien or liens filed against Railroad by Contractor or subcontractors as provided in Section 16;

D.      Contractor (i) ceases doing business as a going concern; (ii) admits in writing its inability to pay its debts as they come due; (iii) files a voluntary petition in bankruptcy; (iv) is adjudicated a bankrupt or an insolvent; (v) files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation; (vi) files an answer admitting the material allegations of a petition filed against it in any such proceeding; or (vii) consents to or acquiesces in the appointment of a trustee, receiver, or action looking to its dissolution or liquidation. If any of these events of default occur, Railroad may immediately terminate this Agreement; and

E.      After (i) the commencement of any proceedings against Contractor seeking reorganization, arrangement, readjustment, liquidation, law or regulation; or (ii) the appointment of any trustee, receiver or liquidator of it or any part of its assets and properties, and such proceeding or appointment is not vacated, Railroad may terminate this Agreement within twenty (20) days of either of these events of default occurring.

F.      Upon the occurrence of an event of default and resulting termination of this Agreement, Railroad, at its sole discretion, may select another contractor to complete the Work and substitute said contractor. Contractor shall pay the difference, if any, between any higher amounts paid by Railroad to the substitute contractor plus that paid to Contractor and the amount of the bid of Contractor.

G.      The remedies provided for in this Section 12 are not deemed exclusive, but shall be cumulative and may be exercised concurrently or consecutively, and shall be in addition to all other remedies in its favor existing in law or equity. Contractor hereby

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

waives any mandatory requirements of law, now or hereinafter in effect, which might limit or modify the remedies provided in this Section 12.

## Section 13.  Liability and Indemnity

A.      **CONTRACTOR ASSUMES ALL RISK OF LOSS AND SHALL DEFEND, INDEMNIFY, AND HOLD RAILROAD, OMNITRAX, THEIR OWNERS, PARENT, MANAGEMENT AND AFFILIATES AND THEIR RESPECTIVE OFFICERS, DIRECTORS, MEMBERS, MANAGERS, EMPLOYEES, AGENTS, SUCCESSORS, SHAREHOLDERS AND ASSIGNS ("INDEMNIFIED PARTIES") HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, INCLUDING, BUT NOT LIMITED TO, CLAIMS ARISING UNDER THE FEDERAL EMPLOYER'S LIABILITY ACT, LIABILITIES, DAMAGES, LOSSES, COSTS OR EXPENSES (TOGETHER WITH ALL LIABILITY FOR ANY EXPENSES, REASONABLE ATTORNEYS' FEES AND COSTS INCURRED OR SUSTAINED BY THE INDEMNIFIED PARTIES, WHETHER IN DEFENSE OF ANY SUCH CLAIMS, DEMANDS, ACTIONS AND CAUSES OF ACTION OR IN THE ENFORCEMENT OF THE INDEMNIFICATION RIGHTS HEREBY CONFERRED) FOR ALL INJURIES OR DEATH OR DAMAGE TO THIRD PARTIES OR EMPLOYEES OF EITHER PARTY AND DAMAGE TO THE PROPERTY OF ANY PARTY, TO THE EXTENT OCCASIONED BY ANY ACT OR OMISSION OF CONTRACTOR OR OF ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY CONTRACTOR OR ANY SUBCONTRACTOR AND RESULTING FROM OR ARISING OUT OF THE WORK PERFORMED OR TO BE PERFORMED PURSUANT TO THIS AGREEMENT, EXCEPT TO THE EXTENT PROXIMATELY CAUSED BY THE INTENTIONAL MISCONDUCT OR THE SOLE GROSS NEGLIGENCE OF  THE PARTY SEEKING INDEMNIFICATION.**

B.      **CONTRACTOR FURTHER AGREES TO ASSUME ALL RISK OF LOSS AND TO DEFEND, INDEMNIFY, AND HOLD HARMLESS THE INDEMNIFIED PARTIES FROM AND AGAINST ANY AND ALL CLAIMS, INCLUDING, BUT NOT LIMITED TO, CLAIMS ARISING UNDER THE FEDERAL EMPLOYER'S LIABILITY ACT, LIABILITIES, DAMAGES, LOSSES, COSTS OR EXPENSES (TOGETHER WITH ALL LIABILITY FOR ANY EXPENSES, REASONABLE ATTORNEYS' FEES AND COSTS INCURRED OR SUSTAINED BY THE INDEMNIFIED PARTIES, WHETHER IN DEFENSE OF ANY SUCH CLAIMS, DEMANDS, ACTIONS AND CAUSES OF ACTION OR IN THE ENFORCEMENT OF THE INDEMNIFICATION RIGHTS HEREBY CONFERRED) FOR ALL INJURIES OR DEATH OR DAMAGE TO THIRD PARTIES OR EMPLOYEES OF EITHER PARTY AND DAMAGE TO THE PROPERTY OF ANY PARTY, TO THE EXTENT OCCASIONED BY SEEPAGE CAUSED BY CONTRACTOR, OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY OR FOR CONTRACTOR OR ANY SUBCONTRACTOR WHICH CAUSE OR CREATE POLLUTION, CONTAMINATION OR ADVERSE EFFECTS ON THE ENVIRONMENT, DUE TO, BUT NOT LIMITED TO, THE DISPOSAL OF ANY MATERIAL OR SUBSTANCE, INCLUDING, BUT NOT LIMITED TO, BATTERIES, DISCHARGE, ESCAPE DISPERSAL, RELEASE OR SATURATION OR SMOKE, VAPORS, SOOT, FUMES, ACIDS, ALKALIS, TOXIC CHEMICALS, LIQUIDS,**

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

**GASES, OR HAZARDOUS SUBSTANCES INTO THE ATMOSPHERE OR ON, ONTO OR INTO THE SURFACE OR SUBSURFACE SOIL. CONTRACTOR SHALL NOT BE LIABLE TO THE EXTENT THAT ANY SUCH LIABILITY, LOSS, DAMAGE, COST, OR EXPENSE IS PROXIMATELY CAUSED BY THE INTENTIONAL MISCONDUCT OR SOLE GROSS NEGLIGENCE OF THE PARTY SEEKING INDEMNIFICATION.**

**C.     CONTRACTOR SHALL INDEMNIFY, HOLD HARMLESS, AND ASSUME THE COST OF DEFENSE OF THE INDEMNIFIED PARTIES FROM AND AGAINST ALL CLAIMS, ACTIONS OR LEGAL PROCEEDINGS ARISING FROM THE VIOLATION OR ALLEGED VIOLATION OF ANY LAWS, ORDINANCES, ORDERS OR REGULATIONS BY CONTRACTOR OR ANY OF ITS SUBCONTRACTORS.**

## Section 14.  Contracts and Subcontracts

Contractor shall not be permitted to sublet, assign, sell, transfer or otherwise dispose of this Agreement or any part of it or its right, title or interest in it to any individual, firm or corporation without the prior written consent of Railroad. In the event that Railroad shall grant its written consent to such subletting, assignment, sale or transfer, then the subcontractor, assignee or purchaser shall be bound by, and shall be deemed to have assumed performance of this Agreement and Contractor shall not be released from its obligations.

## Section 15.  Confidentiality

Neither party shall, during the term of this Agreement, disclose any confidential information, the disclosure of which would be detrimental to the other party. Contractor may not, without written consent of Railroad, advertise in any manner the fact that Contractor is furnishing to Railroad the services conveyed by this Agreement.

## Section 16.  Liens

A.     Contractor agrees that at no time shall it file or permit the filing of a lien or liens upon the Work, equipment or materials provided by Railroad or the property of Railroad. If, at any time, at the time of acceptance of this Agreement, during the progress of the Work, or thereafter, any indebtedness due a subcontractor of Contractor has become or may become a lien or liens upon said Work, equipment or materials or property of Railroad, Contractor shall immediately pay such claim or indebtedness or otherwise cause such lien to be dissolved and discharged by giving a bond or otherwise. In the case of its failure to do so, Railroad may withhold any money due Contractor until such claim or indebtedness is paid or may apply such money toward the discharge thereof, or assert and enforce a claim against Contractor for such claim or indebtedness or declare this Agreement to be cancelled, take possession and control of the Work and complete the same or cause the same to be completed in accordance with the terms and conditions of this Agreement.

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

B.     From time to time during the performance of this Agreement, Contractor may be paying subcontractors furnishing labor, equipment, and materials in full. Concurrent with such payments, Contractor shall obtain a general release of all claims against Railroad from each subcontractor and furnish such releases to Railroad. Contractor shall also give Railroad a general waiver of liens for any claims against Railroad relating to any equipment and materials supplied by a subcontractor.

## Section 17.  Force Majeure

At Railroad's sole discretion, the time allowed for the performance of Work may be extended for delays caused by acts of God, acts of the public enemy, fires, floods, earthquakes, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather or other delays not caused by Contractor's fault or negligence.

## Section 18.  Right of Inspection

Railroad shall have the unlimited right to make any and all inspections and tests that Railroad, in its sole discretion, deems necessary to ascertain whether Contractor has fully and faithfully performed in accordance with this Agreement. Contractor shall provide all support requested by Railroad to perform these inspections and tests.

## Section 19.  Governing Laws and Venue

This Agreement shall be governed and construed in accordance with the laws of the State of Colorado, without regard to any conflicts of law provisions of any jurisdiction. The parties shall submit any disputes arising out of this Agreement to the state courts located in Denver, Colorado.

## Section 20.  Use of Documents

All documents generated by Contractor pursuant to this Agreement are not intended or represented to be suitable for reuse by Railroad or others for any other project or purposes than that for which the same were created.

## Section 21.  Miscellaneous

A.     This Agreement constitutes the entire agreement between the parties respecting the subject matter of it and merges and replaces all prior negotiations, discussions, representations, warranties, offers, promises, and agreements respecting such subject matter.

B.     This Agreement may be amended only by a written instrument signed by both parties.

C.     No waiver by either party or failure of either party to insist upon full and

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

complete performance by the other party of any of its obligations under this Agreement shall constitute or effect a waiver or release of such party's right to insist on full and complete performance of such obligation in the future.

D.     If any party to this Agreement shall institute a legal action or proceeding to interpret or enforce this Agreement, or to obtain damages for breach of this Agreement, the prevailing party shall be entitled to recover its costs and reasonable attorneys' fees, including such fees and costs for enforcement of any judgment.

### Section 22.  Notices

Any notice or other communication required or permitted by this Agreement shall be in writing and delivered by first class mail, postage prepaid, or sent by facsimile as follows:

If to Contractor:                              If to Railroad:

Attn: Fritz Fernow                        Attn: General Counsel
All American Track Inc.                 Kettle Falls International Railway, LLC
PO Box 186                                  252 Clayton Street, 4th Floor
Ash Fork, AZ 86320                      Denver, CO 80206
Phone: (928) 606-3985               Phone: (303) 398-4500
                                                    Fax: (303) 398-4540


**IN WITNESS WHEREOF,** the parties, intending to be legally bound, have executed this Agreement as of the later date shown below.


**All American Track Inc.**                **Kettle Falls International Railway, LLC**

By: _____          By: _____

Printed Name: Ardella Fernow           Printed Name:  Hubert Gassner

Title: President                                   Title:  Manager

Date: 7-13-18                                    Date: 7/19/2018

DocuSign Envelope ID: 08C1D20B-EC33-4DB2-B180-BE23085FDA59

**Exhibit A to Services Agreement**
San Poil Subdivision MP 27.3 and MP 28.2 Dismantle and Re-Construct Track

**Rates**:

| Description | Unit of Measure | Rate |
|---|---|---|
| Track Crew | Day | $9,565.00 |
| Track Crew (Hourly Rate) | Hour | $1,195.00 |
| Track Crew Mobilization (Each Way) | Each | $16,400.00 |
| Surfacing Crew | Day | $7,505.00 |
| Surfacing Crew (Hourly Rate) | Hour | $750.50 |
| Surfacing Crew Mobilization (Each Way) | Each | $31,200.00 |

**Track Crew**:
5-6 man crew consisting of tools, vehicles and equipment to dismantle and re-construct approx. 3000 track feet as directed by the Railroad for a Day Rate listed above. Equipment at a minimum would consist of a Speed Swing, CAT 950 Loader w/forks and 3.5 yd. bucket, Remote Ballaster, Grapple Truck w/operator, and vehicles to transport crews and equipment to the jobsite.

Any additional time will be charged at the Track Crew hourly rate noted above per hour beyond 8 hours per day. Schedule shall be a maximum of 10 days on 4 days off. 15 total days are estimated to complete this work. 5 days to dismantle and 10 days to reconstruct. Dismantling and reconstruction shall be completed with enough time in between as to ensure earthwork contractor completes subgrade work. Equipment and Personnel Mobilization In and Out will be charged at the Track Crew Mobilization rate noted above.

**Surfacing Crew:**
Track Surfacing on the KFIR San Poil Sub will consist of a Jackson 6700 Track Tamper and a Ballast Regulator, (2) Operators, and any vehicles to transport crews and equipment to the jobsite. Surfacing, Aligning and Dressing will be performed as directed by the Railroad for a Day Rate listed above.

Any additional time will be charged at the Surfacing Crew hourly rate noted above per hour beyond 10 hours per day. Equipment and Personnel Mobilization In and Out will be charged at the Surfacing Crew Mobilization rate noted above.

**Material Removal:**
All excess materials would be piled on of right of way for others to remove. If disposal is required by the Railroad a negotiated rate for the use of the AAT Truck and Large End Dump with material disposal will agreed to by the parties in writing.

**Other:**
- All work will conform to the FRA Track Standards for class of track.
- The Railroad would be responsible for any fire protection requirements when 10 or more people are on the job site.
- Track Crew and Surfacing Crew start and end time is from portal to portal, starting at Kettle Falls, WA (railroad office), and ending at Kettle Falls, WA (railroad office.)
- Should work forces have to attend any required classes, (Rules, RWP, Safety, etc.) the hourly charge per crew is as stated above.
- If required, the following items shall be billed separately:
    - Washington State Sales Tax, County Tax
    - Bonds or permits are not included in this quote
- Payment on all invoices will be Net 30 Days. Interest will accrue at 1.5% per month (18% APR) on all balances not paid within 30 days.